UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DANIEL H. HANSON,

                Petitioner,

v.

DAVID G. BETH,

                Respondent.

Case No. 12-CV-408-JPS

ORDER

On May 2, 2012, petitioner Daniel H. Hanson ("Hanson") filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket #1). Hanson's petition presents only one ground for relief: denial of due process and the right to present a defense by the exclusion of certain evidence as to the arresting officer's reputation. (Docket #1, 7).

1. BACKGROUND

    1.1    Factual Background

The factual backdrop to Hanson's petition dates back to June 29, 2006. (Docket #1-2, 2). On that day, the arresting officer, Kenosha County Deputy Sheriff Eric Klinkhammer ("Klinkhammer") pulled Hanson over for speeding on Interstate 94. (*Id.*). During the course of the traffic stop, Hanson exited his car twice and each time Klinkhammer ordered Hanson to return to his car. (*Id.* at 3). In sum, Klinkhammer testified that Hanson disobeyed certain

directives during the traffic stop and acted impetuously. (*Id.*).[1] The altercation crescendoed when Hanson's shirt was ripped by Klinkhammer "as Hanson pulled away to get into his vehicle." (Docket #1-2, 3-4). The Wisconsin Court of Appeals summarized the remainder of the incident as follows:

> It is undisputed that from the time Hanson left the scene of the initial stop until he was apprehended on Highway 50, he was in constant contact with a Kenosha 911 dispatcher. Hanson called 911 to report that a Kenosha police officer "beat [him] in the head" and to request assistance in locating the nearest police station. The recording of the 911 call was introduced at trial. Hanson can be heard informing the 911 dispatcher that he was going to call the police station and that he would not pull over because he believed the officer would beat him with a stick; he was scared for his life.

(Docket #-1-2, 5).

### 1.2 Procedural Background

At the time his petition was filed, Hanson was in Respondent's custody at the Kenosha County Detention Center (Docket #6, ¶¶ 1, 3 n.1), following conviction "in Kenosha County Circuit Court on July 2, 2008, of one felony count of fleeing or eluding an officer, contrary to Wis. Stat. § 346.04(3), and two misdemeanor counts of obstructing an officer, contrary to Wis. Stat. § 946.41(1) [(Docket #1-1)]" (*Id.* at ¶ 2).

---

[1] The Wisconsin Court of Appeals opinion on Hanson's direct appeal acknowledges that "Hanson's testimony at trial contradicted Klinkhammer's in several respects." (Docket #1-2, 4). Hanson testified, *inter alia*, that: (i) Klinkhammer pulled him over by a hand-signal, rather than lights (which Hanson found confusing) (Docket #6-9, 8); (ii) Klinkhammer, from the outset of the traffic stop, "was screaming bloody murder" (*Id.* at 7); (iii) Klinkhammer "smack[ed] him over the top of [his] head with his baton" as Hanson's back was turned to him and Hanson was getting back into his own car (*Id.* at 12); and (iv) Klinkhammer never said that Hanson was under arrest at any point during the initial traffic stop (*Id.* at 38-39).

On September 12, 2008, Hanson was sentenced to a 60-day term of imprisonment as to each of the misdemeanor convictions (to run *concurrently*) and a fine of $1,245.00 as to his felony conviction (to be paid within 30 days or else Hanson would be required to serve a 60-day term of imprisonment *consecutive* to his *concurrent* sentence on the misdemeanor convictions). (Docket #6-1). Respondent's answer to Hanson's petition noted that Hanson was "scheduled to be released on July 22, 2012." (Docket #6, 1).

The Court's Rule Four Screening Order dated May 23, 2012 (the "Rule Four Screening Order") did not find Hanson's petition to be time-barred, nor any issues with exhaustion or procedural default. (Docket #4). The Rule Four Screening Order did acknowledge briefly the conceptual wrinkle presented by the possibility that Hanson's imprisonment may end before this Court issues a decision on his petition. For the sake of clarity, the Court will expound briefly on that analysis.

28 U.S.C. § 2254(a) provides that "…a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only* on the ground that he is *in custody* in violation of the Constitution or laws or treaties of the United States." (emphasis added).

Hanson's circumstances and the "in custody" requirement of § 2254(a) raise two potential issues for this Court: (i) mootness; and (ii) subject matter jurisdiction. In other words: Does satisfaction of Hanson's sentence (including imprisonment) prior to the date this Court issues a decision on Hanson's federal habeas petition (filed while *in custody* of Respondent) either: (i) moot Hanson's claim under § 2254; or (ii) render §2254 unavailable given its "in custody" requirement?

Notwithstanding a federal habeas petitioner's unconditional release, lingering collateral consequences of the petitioner's conviction (e.g., "his

inability to vote, engage in certain businesses, hold public office, or serve as a juror") prevent the petitioner's case from being moot. *Maleng v. Cook*, 490 U.S. 488, 491-492 (1989) (citing to *Carafas v. LaVallee*, 391 U.S. 234, 237-238 (1968)).[2] Therefore, mootness does not preclude this Court from adjudicating Hanson's petition.

As to § 2254's "in custody" requirement, the *Carafas* court concluded that "under the statutory scheme, once the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application." 391 U.S. at 238. In other words, the salient factual issue is whether "the petitioner had been in physical custody under the challenged conviction at the time the petition was filed." *Maleng*, 490 U.S. at 492. Here, the record before the Court indicates that Hanson was in Respondent's custody at Kenosha County Detention Center at the time his petition was filed with this Court. (Docket #6, ¶¶ 1, 3 n.1). Therefore, this Court's subject matter jurisdiction remains intact even if Hanson is no longer in Respondent's custody.

With the benefit of this analysis and against the backdrop of the Rule Four Screening Order, the Court will now analyze Hanson's petition on the merits.

---

[2] In *Sibron v. New York*, 392 U.S. 40, 55, 88 S.Ct. 1889, 1898, 20 L.Ed.2d 917 (1968), the Supreme Court presumed that there are collateral consequences from a criminal conviction and that it is moot "only if it is shown that there is no possibility that any collateral consequences will be imposed on the basis of the challenged conviction." *Id.* at 57, 88 S.Ct. at 1900. Courts subsequently have interpreted *Sibron* as placing the burden on the state to show that there is no possibility of collateral consequences from the challenged conviction. *See, e.g.*, *Malloy v. Purvis*, 681 F.2d 736, 739 (11th Cir.1982), cert. denied, 460 U.S. 1071, 103 S.Ct. 1527, 75 L.Ed.2d 949 (1983).

*D.S.A. v. Circuit Court Branch 1*, 942 F.2d 1143, 1146 n.3 (7th Cir. 1991).

2.  DISCUSSION

As noted *supra*, Hanson's petition presents only one ground for relief: denial of due process and the right to present a defense by the exclusion of certain evidence as to the arresting officer's reputation. (Docket #1, 7).

On direct appeal, the Wisconsin Supreme Court explained that:

> Hanson sought [at trial] to admit a school principal's testimony that, when Klinkhammer served as a school liaison officer, he demonstrated a "confrontational, aggressive, and hot-tempered" character. Hanson argues that Klinkhammer, as the "object" of Hanson's alleged crime of fleeing, was a "victim" within the meaning of Wis. Stat. § 904.04(1)(b) and, therefore, evidence of the deputy's confrontational character is admissible to show that he acted in conformity with that "pertinent trait of character."
>
> . . .
>
> [T]he precise question we must decide is whether, under Wis. Stat. §904.04(1)(b) in the contact of a fleeing charge under Wis. Stat. § 346.04(3), a traffic officer from whom a defendant allegedly fled is a "victim" subject to the character evidence exception in §904.04(1)(b).

(Docket #1-3, 16).[3]

As to that question, the Wisconsin Supreme Court confirmed the propriety of the trial court's decision to exclude the school principal's character evidence about Klinkhammer. (Docket #1-3, 17-20). In particular, the Wisconsin Supreme Court concluded that "the circuit court was correct to exclude testimony about the traffic officer's alleged confrontational character because the officer was not a 'victim' under Wis. Stat. § 904.04(1)(b)." (Docket #1-3, 22).

---

[3] "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (internal citations omitted).

In this connection, the Wisconsin Supreme Court's decision notes that "[a]dditionally, Hanson argues briefly that, as a constitutional matter, his right to present a defense requires that he be allowed to introduce evidence of Klinkhammer's character traits" (*Id.* at 18), though the court observed that "Hanson has addressed these arguments only in a cursory fashion" (*Id.* at 20). The entirety of the Wisconsin Supreme Court's analysis of Hanson's constitutional claim is as follows:

> The right to present a defense is grounded in principles of due process and confrontation, and ensures that criminal defendants are not deprived of legitimate opportunities to challenge the State's theory, and generally to present evidence that could create reasonable doubt in the minds of members of the jury. *See Chambers v. Mississippi*, 410 U.S. 284, 294–95 (1973). That right is limited, though, as this court and the United States Supreme Court have recognized. *See, e.g., Taylor v. Illinois*, 484 U.S. 400, 410 (1988) (acknowledging limitations on constitutional right to present a defense, including exclusion of evidence "inadmissible under standard rules of evidence"); *State v. Pulizzano*,155 Wis. 2d 633, 646-47, 456 N.W.2d 325 (1990) (same). As these and many other cases make clear, the rules of evidence generally have been held to comply with the constitutional right to present a defense. Hanson's challenge does nothing to draw those precedents into question. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004); *Davis v. Washington*, 547 U.S. 813, 822 (2006) (discussing exceptions to the hearsay rule and the right of confrontation).

(Docket #1-3, 20-21).[4]

---

[4] "'Regardless of how a state court applies state evidence rules, a federal habeas court has an independent duty to determine whether that application violates the Constitution.'" *Sussman v. Jenkins*, 636 F.3d 329, 352 (7th Cir. 2011) (quoting *Jones v. Cain*, 600 F.3d 527, 536 (5th Cir. 2010)). "The relevant state court decision is that of the last state court to address the claim on the merits." *Garth v. Davis*, 470 F.3d 702, 710 (7th Cir. 2006) (citation omitted).

When a state prisoner petitions a federal court for habeas relief based on a federal ground adjudicated previously on the merits in state court, the petitioner must show that the state court, when rejecting that ground for relief, rendered "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

Hanson argues in the alternative under § 2254(d)(1) that the Wisconsin Supreme Court's decision "was contrary to or an unreasonable application of controlling Supreme Court authority." (Docket #8, 27). That phrase and the Sixth Amendment's Right to Present a Defense[5] were both expounded upon by the Seventh Circuit in *Horton v. Litscher*:

> Under the "contrary to" clause, habeas relief is proper if the state court "arrive[d] at a conclusion opposite to that reached by [the] Court on a question of law" or "if the state court confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent" and reached a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In assessing whether the state court's decision was an "unreasonable application" of Supreme Court precedent, we look to whether the decision is "objectively unreasonable." *Id.* at 409, 120 S.Ct. 1495. The Supreme Court has cautioned that, in this context, "unreasonable" and "incorrect" are not synonymous: "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision

---

[5] The sole ground in Hanson's petition is articulated in terms of both denial of "due process" and "the right to present a defense" (Docket #1, 7). Given that the U.S. Supreme Court has held that "[t]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations" *Chambers v. Mississippi*, 410 U.S. 284 , 294 (1973), this Court's analysis will be grounded in the right to present a defense.

> applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411, 120 S.Ct. 1495.
>
> . . .
>
> The Sixth Amendment, as interpreted by the Supreme Court, guarantees a criminal defendant the right to present a defense. *See Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). "[A]t a minimum,…criminal defendants have the right…to put before a jury evidence that might influence the determination of guilt." *Taylor v. Illinois*, 484 U.S. 400, 408, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (quotation marks omitted). The Supreme Court has held unconstitutional the rigid application of state evidentiary rules when such an application infringes upon the right to present witnesses in one's own defense, particularly when that testimony is critical to the defense's theory of the case. *Chambers*, 410 U.S. at 302-03, 93 S.Ct. 1038 (holding that "the [rules of evidence] may not be applied mechanistically to defeat the ends of justice").
>
> This right, however, is not unlimited and may "bow to accommodate other legitimate interests in the criminal trial process." Id. at 295, 93 S.Ct. 1038. The state is permitted to impose reasonable restrictions on the presentation of a defense, including state and federal rules "designed to assure both fairness and reliability in the ascertainment of guilt and innocence." Id. at 302, 93 S.Ct. 1038; see also *United States v. Lea*, 249 F.3d 632, 642 (7th Cir.2001) (state courts have "broad latitude to fashion rules which operate to exclude evidence from criminal trials"). Such rules do not abridge an accused's right to present a defense so long as they are not "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Rock v. Arkansas*, 483 U.S. 44, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (citations omitted). The Supreme Court has held "the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998).

427 F.3d 498, 504-505 (7th Cir. 2005).

Hanson argues that the school principal's proposed testimony was: (i) necessary to support his defense because, in Hanson's view, "[n]o other evidence corroborated Hanson's account of Klinkhammer's confrontational and hot-tempered actions during the stop" (Docket #8, 18); and (ii) nonetheless excluded based on "mechanistic application" of Wis. Stat. § 904.04(1)(b) that was arbitrary and disproportionate to the purposes it is designed to serve. (Docket #8, 18).[6] By arguing in these terms, Hanson effectively presents this Court with the following two-part question: Is the Wisconsin Supreme Court's state law evidentiary holding in Hanson's—a defendant's unlawful flight from a pursuing officer in violation of Wis. Stat. §346.04(3) does not render that officer a "victim" subject to the character evidence exception in Wis. Stat. § 904.04(1)(b) (the "No Victim Ruling")—either: (i) unconstitutionally arbitrary; or (ii) unconstitutionally disproportionate to the purpose it is designed to serve? *See Rock*, 483 U.S. at 56 (1987).

2.1     Is the No Victim Ruling Unconstitutionally Arbitrary?

As the Wisconsin Supreme Court's decision in Hanson's case noted, in Wisconsin, "without a determination that an exception under § 904.04(1)(b) applies, propensity evidence is inadmissible in the context of a criminal trial." (Docket #1-3, 16-17). A default prohibition on the admission of propensity evidence is also embodied in the Federal Rules of Evidence. *Compare* Wis. Stat. § 904.04(1) ("Evidence of a person's character or trait of the person's character is not admissible for the purpose of proving that the

---

[6] The Wisconsin Supreme Court's decision in Hanson's case observed in *dicta* that "admission of evidence of the character that the deputy exhibited as a liaison officer would have added little to the jury's understanding of his actions during the traffic stop, in that it was repetitive of other testimony, and it likely would have confused the jury as to the relevant issues." (Docket #1-3, 20).

person acted in conformity therewith on a particular occasion, except: [as provided in Wis. Stat. §§ 904.04(1)(a)-(c)]") *with* Federal Rule of Evidence ("FRE") 404(a)(1)("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait" except where provided in FRE 404(a)(2) or (3)). The Advisory Committee Notes to FRE 404 make reference to, *inter alia*, the following commentary:

> Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened.

(internal citation omitted).

Given that FRE 404(a)(2)(B) provides an exception analogous to the evidentiary exception in Wis. Stat. § 904.04(1)(b) that Hanson sought to invoke, *compare* FRE 404(a)(2)(B) (providing that "subject to the limitations in Rule 412, a defendant may offer evidence of an alleged victim's pertinent trait, and if the evidence is admitted, the prosecutor may….") *with* Wis. Stat. § 904.04(1)(b) (excepting from the general prohibition on admitting character evidence "evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same,…." unless Wis. Stat. § 972.11(2) provides otherwise), the logical place for Hanson to begin his argument would be citation to U.S. Supreme Court precedent holding that a law enforcement officer from whom a criminal defendant unlawfully flees is a "victim" of that flight for purposes of FRE 404(a)(2)(B), but Hanson does not cite any such case and the Court is unaware of such.

Page 10 of 15

Case 2:12-cv-00408-JPS   Filed 02/11/13   Page 10 of 15   Document 17

Instead, Hanson first argues that the No Victim Ruling was arbitrary because, in his view "the alleged offenses [obstructing and fleeing an officer] were not 'victimless crimes' in any common-sense manner" (Docket #8, 20). Notwithstanding his pronouncement, Hanson cites no federal case law to support his reasoning. (*Id.*). As stated above, 28 U.S.C. § 2254(d)(1) requires "clearly established Federal law, as determined by the Supreme Court of the United States" and so Hanson should have marshaled federal case law to support his broad pronouncement. The court is aware of none.

Next, Hanson argues that the No Victim Ruling cannot be reconciled with the state's submission at trial of evidence that Klinkhammer was endangered. (*Id.*). That statement ignores the Wisconsin's intermediate court's determination that "the evidence did not support a finding that Klinkhammer suffered injury, sustained losses or was otherwise victimized so as to make relevant the proffered character evidence." (Docket #1-2, 12).[7]

Hanson proceeds to argue that he should not be denied corroborating evidence "because Hanson chose not to respond to violence with violence." (Docket #8, 21). That argument is specious. If Hanson had committed violence against Klinkhammer, he presumably would have been charged with a *separate and distinct* crime—assaulting an officer—and perhaps *that* crime would render the officer a "victim" subject to the character evidence exception in Wis. Stat. § 904.04(1)(b).

In light of the analysis set forth above, this Court is obliged to conclude that Hanson simply has not demonstrated unconstitutional arbitrariness through reference to "clearly established Federal law, as

---

[7] Hanson does not point the Court to any portion of the Wisconsin Supreme Court's decision critical of that determination and this Court finds none.

determined by the Supreme Court of the United States[,]" as required by 28 U.S.C. § 2254(d)(1). Accordingly, Hanson fails to persuade on this question.

> 2.2  Is the No Victim Ruling Unconstitutionally Disproportionate to the Purpose it is Designed to Serve?

As to this question, Hanson argues that:

> [T]he state's decision to exclude [the corroborating] evidence when the defendant's actions do not injure the officer but to allow admission of it when the officer is injured serves no legitimate state interest, or at the very least is vastly disproportionate to any legitimate state interests it may be intended to serve.

(Docket #8, 17). For the reasons discussed *supra* at the end of Section 2.1, this reasoning is specious and so the argument fails. Moreover, Hanson ignores the Wisconsin Supreme Court's reference to the teachings of Professor Daniel D. Blink in the Wisconsin Practice Series:

> Typically, where a crime involves a victim, such as in the case of an assault or a homicide, the defendant is given "[w]ide latitude" to use evidence of the victim's character to show action "in conformity therewith." *See* 7 Daniel D. Blinka, Wisconsin Practice Series: Wisconsin Evidence § 404.5 (3d ed. 2008). But as Professor Blinka notes, where no "victim" exists, the general ban on propensity evidence will be enforced. *See id.*; see also Wis. Stat. § 904.04(1).

(Docket #1-3, 17).

As the Wisconsin Court of Appeals noted in 1978, the purpose underlying the default general ban on admission of propensity evidence embodied in Wis. Stat. § 904.04(1) has deep roots:

> American law has long recognized the weakness of an inference that a person necessarily acts in accordance with his character upon a particular occasion. That inference has been rejected in the general rule that character evidence is irrelevant and inadmissible to prove conduct upon a particular occasion. Sec. 904.04(1).

*Milenkovic v. State*, 86 Wis.2d 272, 278 (Wis. Ct. App. 1978).

Ostensibly, the No Victim Ruling serves to reinforce these principles. Yet, by ignoring those principles, Hanson fails to make an argument of disproportionality with reference to them. Instead, Hanson contends:

> [T]he Constitution and controlling Supreme Court authority require "'a balancing of interests depending on the circumstances of the case.'" *Sussman v. Jenkins*, 636 F.3d 329, 354 (7th Cir. 2011), quoting *White v. Coplan*, 3[99] F.3d 18, 24 (1st Cir. 2005). Neither a balancing of interests nor even the identification of the relevant interests is reflected in either the state supreme court's decision or the respondent's brief.

(Docket #16, 2-3).

However, a review of the three U.S. Supreme Court cases cited by the First Circuit in its *White* decision immediately following its general declaration about a "balancing of interests depending on the circumstances of the case"—*Davis v. Alaska*, 415 U.S. 308, 319, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986), and *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)—reveals that Hanson's extrapolation from the language in *White* (as quoted by *Sussman*) is overbroad and not merited.[8]

At bottom, Hanson demands a more fulsome explanation from the Wisconsin Supreme Court than its statements that: "[a]s [*Chambers* and *Taylor*] and many other cases make clear, the rules of evidence generally have been held to comply with the constitutional right to present a defense" and

---

[8] It is in this context that Hanson makes his argument under the "unreasonable application" clause of 28 U.S.C. § 2254(d)(1): "the state court's failure to recognize the need for [*White* and *Sussman*] balancing rendered the state court decision an unreasonable application of controlling Supreme Court precedent." (Docket #8, 27). In light of the analysis set forth *supra*, this argument fails as well.

"Hanson's challenge does nothing to draw those precedents into question." (Docket #1-3, 20-21); *See* (Docket #8, 18). But this ignores the following teaching of the U.S. Supreme Court:

> A state-court decision is "contrary to" our clearly established precedents if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Avoiding these pitfalls does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.

*Early v. Packer*, 537 U.S. 3, 8 (2002)

This Court, against the backdrop of the analysis *supra* and the record before it, is unable to conclude that either the reasoning or the result of the Wisconsin Supreme Court's treatment of Hanson's constitutional claim contradicts "clearly established Federal law, as determined by the Supreme Court of the United States[,]" as 28 U.S.C. § 2254(d)(1) requires for the applied writ to issue.

3.  Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), the applicant must make "a substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). While Rule 11(a) permits

Page 14 of 15

Case 2:12-cv-00408-JPS   Filed 02/11/13   Page 14 of 15   Document 17

a district court to direct the parties to submit arguments on whether a certificate of appealability should issue, additional argument is not necessary here. Given the record before the Court, no reasonable jurist would find it debatable whether this Court was correct in its ruling on the present petition. Therefore, the Court must and will deny a certificate of appealability as to Hanson's petition.

Accordingly,

IT IS ORDERED that Hanson's petition for a writ of habeas corpus (Docket #1) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that a certificate of appealability as to Hanson's petition be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that this case be and the same is hereby DISMISSED.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 11th day of February, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge